IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PUREWICK CORPORATION )
)
Plaintiff, )
)
v. ) C.A. No. 26-_____
)
MEDLINE INC., MEDLINE HOLDINGS, ) **JURY TRIAL DEMANDED**
LP, MOZART GP, LLC, MEDLINE )
INDUSTRIES, LP, and CM )
TECHNOLOGIES, INC. )
)
Defendants. )

## COMPLAINT

Plaintiff PureWick Corporation ("PureWick" or "Plaintiff"), by their undersigned attorneys, bring this action demanding a jury trial against Defendants Medline Inc., Medline Holdings, LP, Mozart GP, LLC, Medline Industries, LP (collectively "Medline"), and CM Technologies, Inc. ("Consure") (Medline and Consure, collectively "Defendants"):

## NATURE OF ACTION

1.      This is an action for patent infringement of U.S. Patent No. 10,226,376 ("the '376 patent), U.S. Patent No. 10,390,989 ("the '989 patent"), U.S. Patent No. 11,090,183 ("the '183 patent"), U.S. Patent No. 11,938,053 ("the '053 patent"), U.S. Patent No. 12,161,579 ("the '579 patent"), U.S. Patent No. 12,193,962 ("the '962 patent"), and U.S. Patent No. 12,324,765 ("the '765 patent") (collectively, "the Patents-in-Suit") under the Patent Laws of the United States, 35 U.S.C. §§ 1, *et seq.* arising from Defendants' manufacture, use, sale, offer for sale, and/or importation of male and female external catheters and urine management devices, including the Versette External Catheter ("Versette"), QiVi Male External Catheter ("QiVi Male"), QiVi Female

1

External Catheter ("QiVi Female"), and the Medline Automated Urine Management Device ("AUM") (collectively, "the Accused Products") prior to the expiry of the Patents-in-Suit.

## THE PARTIES

2.      PureWick Corporation is a corporation organized and existing under the laws of the State of California with a principal place of business located at 8195 Industrial Blvd, Covington, GA 30014.  PureWick is a wholly owned subsidiary of C.R. Bard, Inc., which is itself a wholly-owned subsidiary of Becton, Dickinson and Company.

3.      On information and belief, CM Technologies, Inc. is incorporated under the laws of Delaware with a principal place of business at 1321 Valwood Parkway, Suite 530, Carrolton, TX 75006.

4.      On information and belief, Medline Inc. is incorporated under the laws of Delaware, with a principal place of business at Three Lakes Drive, Northfield, Illinois 60093.  Medline Inc. is the sole general partner of Medline Holdings, LP.

5.      On information and belief, Medline Holdings, LP is a limited partnership formed under the laws of Delaware with a principal place of business at Three Lakes Drive, Northfield, Illinois 60093.  Medline Holdings, LP is the sole managing member of Mozart GP, LLC.

6.      On information and belief, Mozart GP, LLC is a limited liability company formed under the laws of Delaware with a principal place of business at Three Lakes Drive, Northfield, Illinois 60093.  Mozart GP, LLC is the sole general partner of Medline Industries, LP.

7.      On information and belief, Medline Industries, LP is a limited partnership formed under the laws of Illinois with a principal place of business at Three Lakes Drive, Northfield, Illinois 60093.

2

## JURISDICTION AND VENUE

8.      This is an action for patent infringement arising under the patent laws of the United States of America, 35 U.S.C. § 1, et. seq., including 35 U.S.C. § 271.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9.      This Court has personal jurisdiction over CM Technologies, Inc., Medline Inc., Medline Holdings, LP, and Mozart GP, LLC based on each entity's incorporation or formation in the State of Delaware.

10.     This Court also has personal jurisdiction over CM Technologies, Inc., Medline Inc., Medline Holdings, LP, Mozart GP, LLC, and Medline Industries, LP based on each entity purposefully directing activities to or within the state of Delaware, including intentionally offering for sale and selling products, including the products accused of infringement in this Complaint, in the state of Delaware.

11.     Venue is proper in this Court under 28 U.S.C. § 1400(b) as to CM Technologies, Inc., Medline Inc., Medline Holdings, LP, and Mozart GP, LLC based at least on each entity's incorporation or formation in, and therefore residence in, the State of Delaware.

12.     Venue is proper in this Court under 28 U.S.C. § 1400(b) as to Medline Industries, LP because venue is proper for Medline Inc., Medline Holdings, LP, and Mozart GP, LLC, which operate and control all of the business and affairs of Medline Industries, LP.[1]  Further, on information and belief, Medline Inc., Medline Holdings, LP, Mozart GP, LLC, and Medline Industries LP all share employees and officers, such as, for example, Alexander Liberman, who is

---

[1]  https://www.sec.gov/Archives/edgar/data/2046386/000119312525253020/d932091ds1.htm ("As the general partner of Medline Holdings, Medline Inc. will operate and control all of the business and affairs of Medline Holdings and, through Medline Holdings and its subsidiaries, conduct our business.") (*last accessed* April 28, 2026).

the Chief Legal Officer, General Counsel, and/or Legal Secretary for Medline Inc., Medline Holdings, LP, Mozart GP, LLC, and Medline Industries, LP.

13.    Venue is also proper in this Court under 28 U.S.C. § 1400(b) as to Medline Industries, LP because Medline Industries, LP has committed acts of infringement in the state of Delaware and operates at least one regular and established place of business in the state of Delaware.

14.    On information and belief, Medline Industries, LP has committed acts of infringement in the state of Delaware by offering for sale and selling the Accused Products in Delaware to Delaware hospitals, including ChristianaCare, Bayhealth, and TidalHealth.  For example, on information and belief, Medline Industries, LP has offered the Accused Products for sale to ChristianaCare as part of the SURPASS purchasing program provided by Premier Inc., a group purchasing organization ("GPO") that uses Medline Industries, LP as a supplier and distributor of the products it provides to member hospitals like ChristianaCare.  Premier Inc., as a GPO, negotiates to purchase medical supplies on behalf of ChristianaCare and other hospitals to combine their bargaining power and received offers to sell the Accused Products from Medline Industries, LP on behalf of ChristianaCare.

15.    On information and belief, along with offering for sale and selling Medline's own products, Medline Industries, LP also operates as a distributor and procurer of medical products, including the Accused Products, for hospitals in Delaware.

16.    On information and belief, Medline Industries, LP operates as a distributor and procurer for Delaware hospitals, including ChristianaCare, Bayhealth, and TidalHealth.

4

17.     On information and belief, Medline Industries, LP maintains regular and established places of business at physical locations in Delaware to coordinate distribution and procurement for these Delaware hospitals.

18.     On information and belief, as one specific example, Medline Industries, LP employs and has employed Deidra Edwards as an on-site Prime Vendor Analyst in Delaware from May 2022 to the present, as indicated by her LinkedIn profile.[2]

19.     On information and belief, Prime Vendor Analysts for Medline Industries, LP are employees who have on-site offices within or near their hospital customers to "develop relationships with the customer[s]," "[l]ead/participate in various meetings on behalf of customer[s]," and "present findings to key contacts in the customer's procurement team," as described by a Medline job posting from April 3, 2026.[3]

20.     On information and belief, Deidra Edwards has an office located at 300 Executive Drive, Newark, DE 19702, which she uses to regularly provide distribution and procurement services to ChristianaCare.

21.     On information and belief, Deidra Edwards holds herself out publicly as an employee of Medline Industries, LP and lists her office phone number as 302-413-3990, which is registered to Medline Industries, LP and is geographically associated with New Castle, Delaware.

22.     On information and belief, Medline Industries, LP also utilizes on-site employees in Delaware to provide distribution and procurement services to TidalHealth and Bayhealth.

---

[2]   https://www.linkedin.com/in/deidra-edwards-5001a5214/ (*last accessed* April 28, 2026).

[3]   https://medline.wd5.myworkdayjobs.com/en-US/Medline/job/Analyst-Prime-Vendor_R2603574-1 (*last accessed* April 28, 2026).

23.     Further, on information and belief, Medline Industries, LP operates Medline Home Direct to provide distribution services to home health agencies, hospice agencies, and home medical equipment providers.[4]

24.     On information and belief, Medline Industries, LP operates warehouses and distribution centers nationwide to enable quick delivery of medical products.  As stated on its website, Medline Industries, LP operates one of these warehouses out of the state of Delaware.[5]

## PUREWICK'S EXTERNAL CATHETERS AND URINE COLLECTION SYSTEMS

25.     Based on years of research and development efforts, PureWick revolutionized incontinence care through its development and commercialization of female and male external catheters and urine collection systems that work with external catheters.

26.     PureWick developed the first ever female external catheter, the PureWick™ Female External Catheter Solution ("PureWick Female").  The PureWick Female provides a non-invasive incontinence solution for women, designed to reduce catheter-associated urinary tract infections ("CAUTI") and skin damage caused by urine-soaked diapers and bedding.  The PureWick Female has shown an ability to consistently capture and take away urine, while improving users' sleep quality as they do not have to be awakened for diaper changes.

27.     PureWick also developed an innovative shape-retaining female external catheter, the PureWick™ Flex Female External Catheter Solution ("PureWick Flex").  The PureWick Flex adapts to a range of body types and has the highest urine capture rate among female external catheters, preventing leakage and thereby reducing infections and skin damage.

---

[4]   https://www.medline.com/capabilities/logistics/medline-home-direct/ (*last accessed* April 28, 2026).

[5]   https://www.medline.com/capabilities/logistics/medline-home-direct/ (*last accessed* April 28, 2026).

28.     PureWick also developed an innovative male external catheter, the PureWick™ Male External Catheter Solution ("PureWick Male").  The PureWick Male provides a non-invasive incontinence solution for men, designed to reduce CAUTI and skin damage caused by urine-soaked condom catheters, diapers, and bedding.  Further, the PureWick Male provides a viable option for men whose anatomy is incompatible with condom catheters.  The PureWick Male has shown an ability to consistently capture and take away urine, while improving users' sleep quality as they do not have to be awakened for diaper changes.

29.     PureWick also developed an innovative self-contained suction pump and collection cannister that enables patients to use external catheters at home, the PureWick™ Urine Collection System ("PureWick UCS").  The PureWick UCS is a quiet, clean, and simple option to manage urinary incontinence throughout the night.

30.     PureWick also developed a portable collection system that enables patients to use external catheters while maintaining their mobility, the PureWick™ Portable Collection System ("PureWick PCS").  The self-contained and battery-powered PureWick PCS can be carried or attached to wheelchairs.  The PureWick PCS is described at https://www.purewickathome.com/purewick-portable-system.html.

## THE PATENTS-IN-SUIT

31.     In recognition of PureWick's extensive and groundbreaking research and development efforts, the United States Patent and Trademark Office ("USPTO") has granted several families of patents claiming female and male external catheters and urine collection systems.  These include the Patent-in-Suit.

32.     On March 12, 2019, the USPTO duly and legally issued the '376 patent, titled "Apparatus And Methods For Receiving Discharged Urine."  PureWick is the owner by

7

assignment of the '376 patent. A true and accurate copy of the '376 patent is attached hereto as Exhibit 1.

33. On August 27, 2019, the USPTO duly and legally issued the '989 patent, titled "Apparatus And Methods For Receiving Discharged Urine." PureWick is the owner by assignment of the '989 patent. A true and accurate copy of the '989 patent is attached hereto as Exhibit 2.

34. On August 17, 2021, the USPTO duly and legally issued the '183 patent, titled "Container For Collecting Liquid For Transport." PureWick is the owner by assignment of the '183 patent. A true and accurate copy of the '183 patent is attached hereto as Exhibit 3.

35. On March 26, 2024, the USPTO duly and legally issued the '053 patent, titled "Fluid Collection Devices, Systems, And Methods." PureWick is the owner by assignment of the '053 patent. A true and accurate copy of the '053 patent is attached hereto as Exhibit 4.

36. On December 10, 2024, the USPTO duly and legally issued the '579 patent, titled "Apparatus And Methods For Receiving Discharged Urine." PureWick is the owner by assignment of the '579 patent. A true and accurate copy of the '579 patent is attached hereto as Exhibit 5.

37. On January 14, 2025, the USPTO duly and legally issued the '962 patent, titled "Using Wicking Material To Collect Liquid For Transport." PureWick is the owner by assignment of the '962 patent. A true and accurate copy of the '962 patent is attached hereto as Exhibit 6.

38. On June 10, 2025 the USPTO duly and legally issued the '765 patent, titled "Apparatus And Methods For Receiving Discharged Urine." PureWick is the owner by assignment of the '765 patent. A true and accurate copy of the '765 patent is attached hereto as Exhibit 7.

## DEFENDANTS' INFRINGING PRODUCTS

39.      In or around March 2021, Medline introduced the Versette, which is described on Medline's website.[6]  On information and belief, Medline makes, uses, offers to sell, and/or sells the Versette in the United States, and/or imports the Versette into United States .

40.      Medline's website describes Versette as an "[e]xternal catheter[]" that can "help to reduce the risk of catheter associated urinary tract infection."  The website also states that Versette "[c]onform[s] effectively to accommodate a wide range of patient anatomies" and is "[c]ompatible with females and males with retracted anatomies."

41.      Medline has published an instructional video showing how to use the Versette on women.[7]  Medline has also published an instructional video showing how to use the Versette on men.[8]

42.      Medline's instructional video for women states that "Versette can be customized in many ways depending on patient anatomy and comfortability."  The instructional video includes the below images of Versette's various configurations:

---

[6]  https://www.medline.com/product/Versette-External-Catheters/Z05-PF274768 (*last accessed* April 28, 2026).

[7]  https://vimeo.com/1013226862 (*last accessed* April 28, 2026).

[8]  https://vimeo.com/1114033376 (*last accessed* April 28, 2026).



43.    Medline's instructional video for women instructs users to align the patient's urethral opening with the "blue zone" shown above so that urine can "wick through the material and suction up through the suction tubing."

44.    Provided herewith as Exhibit 8 is a true and correct copy of the "Instructions for Use" that are provided with Versette and instruct how to use Versette on patients.

10

45.     The Versette Instructions for Use state that Versette is an "External Catheter" "for non-invasive collection of urine output management in (female) patients." Ex. 8. The Instructions for Use instruct users to "[f]old pad in half" as shown in the "Folded (I) method" above, and "[a]pply pressure to ensure adhesive strips stick together." Ex. 8. Then, the Instructions state that users should "[p]osition the device with tubing facing up towards the patients abdomen and mesh fabric facing the patient's genital area," "[s]pread the patient's tissue around the genital area, place mesh fabric against the urethra securely," and "ensure the bottom of the device sits at the gluteal cleft." Ex. 8. The user is then instructed to connect the Versette's tubing with a suction cannister. Ex. 8.

46.     On information and belief, in or around April 2024, Medline signed an agreement with Consure for the exclusive right to sell Consure's QiVi Male. The QiVi Male is described on Medline's website.[9] On information and belief, Defendants make, use, offers to sell, and/or sell the QiVi Male in the United States, and/or import the QiVi Male into United States.

47.     On information and belief, prior to April 2024, Consure made, used, offered to sell and/or sold the QiVi Male in the United States, and/or imported the QiVi Male into United States..

48.     Medline has published an instructional video showing how to use the QiVi Male on men.[10] Images of the QiVi Male from Medline's instructional video are below:

---

[9]   https://www.medline.com/product/QiVi-Male-External-Catheter-Urine-Management-Device/External-Catheters/Z05-PF306591 (*last accessed* April 28, 2026).

[10]   https://vimeo.com/910585392 (*last accessed* April 28, 2026).





49.     The instructional video describes the QiVi Male as an "external urine management system designed for non-ambulatory male patients," wherein you "slide the device onto the penal shaft until it is flushed with the base of the pubic region," "peel back the red tabs, applying the adhesive from top to bottom," and then "connect to the suction tubing."

50.     Provided herewith as Exhibit 9 is a true and correct copy of the "Instructions for Use" that were provided with QiVi Male and instruct how to use QiVi Male on patients.

12

51.     The QiVi Male Instructions for Use state that QiVi Male is an "External Urine Management device" "indicated for non-invasive urine management in semi and non-ambulatory adolescent and adult male patients by diverting and collecting urine away from the patient's body." Ex. 9.  The Instructions also state that "[t]he primary components of the device are an adhesive patch designed to secure the product around the patient's anatomy and a pouch designed to collect and divert urine as and when discharged by the patient." Ex. 9.  The Instructions explain that "[t]he internal configuration of the pouch is designed to continuously divert fluid from the pouch to an external collection unit, connected to either a wall vacuum system - typically found in health care facilities, or an external portable suction unit." Ex. 9.

52.     On information and belief, in or around April 2024, Medline signed an agreement with Consure for the exclusive right to sell Consure's QiVi Female, which is described on Medline's website.[11]  On information and belief, Defendants make, use, offer to sell, and/or sell the QiVi Female in the United States, and/or import the QiVi Female into United States.

53.     Prior to April 2024, Consure made, used, offered to sell and/or sold the QiVi Female in the United States and/or imported the QiVi Female into the United States.

54.     Consure has also published an instructional video showing how to use the QiVi Female on women.[12]  Images of the QiVi Female from Consure's instructional video is shown below:

---

[11]  https://athome.medline.com/en/qivi-female-external-urine-management-15ct-mg12021001md/ (*last accessed* April 28, 2026).

[12]  https://www.consuremedical.com/video/qivi-truly-external-female-urine-management-device-by-consure-medical/ (*last accessed* April 28, 2026).





55.    The Medline website describes the QiVi Female as an "[e]xternal female urine management solution" with a "flexible frame [that] contours the anatomy" and "[t]aut adhesive [that] aids in adequate adhesion and offsets anchoring to suprapubic region."

56.    Provided herewith as Exhibit 10 is a true and correct copy of the "Instructions for Use" that were provided with QiVi Female and instruct how to use QiVi Female on patients.

14

57.     The QiVi Female Instructions for Use state that QiVi Female is an "External Urine Management device" "designed for the management of urine in semi and non-ambulatory female patients." Ex. 10.  The Instructions also state that "[t]he primary components of the device are an adhesive patch, designed to secure the product around the patient's suprapubic region and a urine collection chamber that contours over the anatomy to collect and divert urine as it passes from the patient.." Ex. 10.  The Instructions explain that "[t]he internal configuration of the device is designed to continuously divert fluid from the collection chamber to an external container, via tubing connected to a wall vacuum unit, typically found in critical care facilities." Ex. 10.

58.     The QiVi Female Instructions for Use instruct users to "[a]lign the distal end at the perineum and place the device taut over the labia with the collection chamber contouring the urethral opening," "use the peel tabs to remove the adhesive liner and place the adhesive patch at the suprapubic region, and "[w]ith the distal end connected to suction canister, connect the suction tube with the QiVi device." Ex. 10.

59.     On information and belief, in or around June 2025, Medline began selling the AUM, which is described on Medline's website.[13]  On information and belief, Defendants make, uses, offers to sell, and/or sells the AUM in the United States, and/or imports the AUM into United States.

60.     Medline has also published an instructional video instructing showing how to use the AUM.[14]  An image of the AUM from Medline's instructional video is below:

---

[13]  https://www.medline.com/product/Medline-Automated-Urine-Management-Device/Z05-PF320250 (*last accessed* April 28, 2026).

[14]  https://vimeo.com/1097000392 (*last accessed* April 28, 2026).



61.     The instructional video describes the AUM as a device that is "designed to collect urine … in a portable setting" and is operated by connecting the "pump tube … to the port labeled 'vacuum' on the canister lid … and connect the other end of the pump tube to the suction unit," connecting the "drainage pump to the urine inlet port labeled 'patient' on the canister lid … and connect the other end to the external urine management device," and then "plac[ing] the catheter device on patient."  The instructional video states that the AUM "works with most suction based external catheters, like Medline's QiVi and Versette."

## COUNT I

## INFRINGEMENT OF THE '376 PATENT

62.     The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

63.     Defendants have directly infringed, and continue to directly infringe, the '376 patent by making, using, offering for sale, selling, and/or importing into the United States external catheters, including the Versette and QiVi Female, and contributed to and/or induced infringement

16

of the '376 patent by others, including hospitals, patients, and other customers by making, using, offering for sale, selling, and/or importing into the United States external catheters and urine management devices, including the Versette, QiVi Female and AUM.

64.     For example, and without limitation, upon information and belief, the materials referenced above show that the Versette and QiVi Female meet every limitation of at least independent claim 1 of the '376 patent.

65.     As shown in the images, Instructions for Use, and instructional videos referenced above, the Versette and QiVi Female are "[a]n apparatus comprising: a fluid impermeable casing having a fluid reservoir at a first end, a fluid outlet at a second end, and a longitudinally extending fluid impermeable layer coupled to the fluid reservoir and the fluid outlet." '376 patent at 36:9-13.

66.     The "longitudinally extending fluid impermeable layer" of the Versette and QiVi Female "defin[e] a longitudinally elongated opening between the fluid reservoir and the fluid outlet." '376 patent at 36:13-15.

67.     The Versette and QiVi Female include "a fluid permeable support disposed within the casing with a portion extending across the elongated opening, wherein the fluid permeable support is distinct from and at least proximate to the fluid reservoir." '376 patent at 36:16-19.

68.     The Versette and QiVi Female include "a fluid permeable membrane disposed on the support and covering at least the portion of the support that extends across the elongated opening, so that the membrane is supported on the support and disposed across the elongated opening." '376 patent at 36:20-24.

69.     The Versette and QiVi Female include "a tube having a first end disposed in the reservoir and extending behind at least the portion of the support and the portion of the membrane

17

disposed across the elongated opening and extending through the fluid outlet to a second, fluid discharge end." '376 patent at 36:25-29.

70. The Versette and QiVi Female are apparatuses "configured to be disposed with the opening adjacent to a urethral opening of a user, to receive urine discharged from the urethral opening through the opening of the fluid impermeable layer, the membrane, the support, and into the reservoir, and to have the received urine withdrawn from the reservoir via the tube and out of the fluid discharge end of the tube." '376 patent at 36:30-36.

71. Thus, the Versette and QiVi Female meet every limitation of at least independent claim 1 of the '376 patent and Defendants directly infringes claim 1 in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing the Versette and/or QiVi Female into the United States.

72. Defendants also have indirectly infringed and continue to indirectly infringe the claims of the '376 patent by inducing infringement pursuant to 35 U.S.C. § 271(b) and/or contributing to infringement pursuant to 35 U.S.C. § 271(c).

73. On information and belief, in violation of 35 U.S.C. § 271(b), Defendants specifically intended to induce infringement of the '376 patent by the customers and users of the Versette, QiVi Female, and AUM and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.

74. On information and belief, Defendants knew or were willfully blind to the existence of the '376 patent by at least March 12, 2019 when the patent issued. Plaintiff and Defendants are direct and active competitors in the field of female and male external urine management systems and thus it is highly likely that Defendants would have been aware when the '376 patent issued.

18

75.     Further, Medline knew or was willfully blind to the existence of the '376 patent by at least March 12, 2019 when the patent issued because Medline previously conducted a diligence investigation into PureWick's patent portfolio and the PureWick Female product when considering whether to acquire PureWick.

76.     Further, Defendants knew or were willfully blind to the existence of the '376 patent by at least August 12, 2019 when PureWick asserted the '376 patent against Sage Products, LLC's ("Sage") female external product, PrimaFit in *PureWick Corp. v. Sage Prods., LLC*, C.A. No. 19-1508-MN (D. Del.), or by April 1, 2022, when a jury determined the '376 patent was valid and that Sage's Primafit product infringed the '376 patent.

77.     Further, Defendants knew or were willfully blind to the existence of the '376 patent by at least January 26, 2022 when PureWick asserted the '376 patent against Sage's female external product, PrimaFit 2.0 in *PureWick Corp. v. Sage Prods., LLC*, C.A. No. 22-102-MN (D. Del.), or Medline knew or was willfully blind by at least on or around December 15, 2022, when Medline Industries, LP was served with a subpoena in that litigation.

78.     Plaintiff and Defendants are direct and active competitors in the field of female and male external urine management systems and thus it is highly likely that Defendants would have been aware of these litigations.

79.     Further, Defendants' patent filings demonstrate that they were aware of the '376 patent.  For example, Medline Industries, LP is the applicant for U.S. Patent No. 11,504,265, which was filed on June 18, 2020 and, upon information and belief, is related to the Versette.  As part of the prosecution of that patent, Medline Industries, LP submitted an information disclosure statement on June 19, 2020 listing the '376 patent.  Similarly, CM Technologies, Inc. is the applicant for U.S. Patent No. 11,207,206, which was filed on April 20, 2021 and, upon information

and belief is related to the QiVi products.  As part of the prosecution of that patent, CM Technologies, Inc. submitted an information disclosure statement on June 18, 2021 listing the '376 patent.

80.     On information and belief, Defendants' customers directly infringe the '376 patent. For example, when the Versette or QiVi Female is sold to hospitals, medical professionals, and/or patients, those users infringe at least independent claim 1 of the '376 patent through the use of the Versette or QiVi Female.

81.     Further, when urine management devices, including the AUM, are sold to hospitals, medical professionals, and/or patients, those customers infringe at least dependent claim 8 of the '376 patent through the use of urine management devices, including the AUM, with external female catheters, including the Versette or QiVi Female.  Claim 8 of the '376 patent depends from independent claim 1 and adds that the apparatus is "further comprising a source of vacuum fluidically coupled to the discharge end of the tube."  '376 patent at 36:60-62.  The materials referenced above show that AUM is a "source of vacuum fluidically coupled to the discharge end of the tube."  Therefore, when Defendants' customers use the AUM in combination with external female catheters like the Versette or QiVi Female, which satisfy the limitations of claim 1 of the '376 patent, the resulting apparatus directly infringes claim 8 of the '376 patent.

82.     On information and belief, Defendants specifically intend for customers to infringe the '376 patent.  Defendants encourage infringement by customers at least by providing product support that instructs users on how to use the Versette, QiVi Female, and AUM.  For example, as described above, Medline provides "Instructions for Use" and directs customers to an instructional video.  Ex. 8.  The Instructions and video give detailed instructions for use of Versette for "non-invasive collection of urine output management in (female) patients."  Ex. 8.  As another example,

20

as described above, Defendants provide Instructions for Use for the QiVi Female, which states that the QiVi Female "designed for the management of urine in semi and non-ambulatory female patients" and describes the device as including "a urine collection chamber that contours over the anatomy to collect and divert urine as it passes from the patient." Ex. 10.  As another example, Medline has provided an instructional video for the AUM that describes it as a device that is "designed to collect urine … in a portable setting" and "works with most suction based external catheters, like Medline's QiVi and Versette."

83.    On information and belief, despite Defendants' knowledge of the '376 patent and knowledge that customers will necessarily infringe the '376 patent when the Versette, QiVi Female, and AUM are used as instructed, Defendants continues to encourage infringement.

84.    Defendants also contribute to infringement of the '376 patent by Defendants' customers in violation of 35 U.S.C. § 271(c).  On information and belief, Defendants were aware of the '376 patent at least as early as March 12, 2019 or August 12, 2019 or June 19, 2020 or June 18, 2021 or January 26, 2022 or April 1, 2022 or February 16, 2023.  On information and belief, Defendants offer to sell and sell within the United States the Versette, QiVi Female, and AUM knowing that they constitute a material part of the claimed inventions, knowing that the Versette, QiVi Female, and AUM are especially made or especially adapted for use in infringing the '376 patent, and knowing that the Versette, QiVi Female, and AUM are not a staple article or commodity of commerce suitable for substantial non-infringing use.

85.    Defendants have committed and continues to commit all of the above acts of infringement without license or authorization.

21

86.     PureWick has complied with the requirements of 35 U.S.C. § 287 by, among other things, marking its products with the '376 patent, and giving actual notice to Defendants of their infringement of the '376 patent by, *inter alia*, service of this Complaint.

87.     As a result of Defendants' infringement of the '376 patent, Plaintiff has suffered damages and will continue to suffer damages.

88.     On information and belief, the infringement of the '376 patent by Defendants has been and continues to be willful.  On information and belief, Defendants have had knowledge of the '376 patent and knowledge that the PureWick Female, PureWick Flex, PureWick UCS, and PureWick PCS are covered by the '376 patent.  On information and belief, Defendants copied the patented aspects of the PureWick Female and PureWick UCS despite knowing that they are covered by the '376 patent.  Defendants have thus sold the Versette and QiVi Female knowing of the risk of infringement and/or in view of a risk of infringement that was sufficiently obvious that it should have been known to Defendants.  Despite this risk, Defendants have deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for PureWick's patent rights.  Thus, Defendants' infringing actions have been and continue to be consciously wrongful, entitling PureWick to increased damages under 35 U.S.C. § 284.

89.     Under 35 U.S.C. § 283, Plaintiff is entitled to a permanent injunction against further infringement.  Defendants' wrongful conduct has caused and will continue to cause Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent right to exclude others from making, using selling, offering to sell, and/or importing Plaintiff's patented inventions.  On information and belief, Defendants will continue to infringe the '376 patent unless permanently enjoined by the Court.

## COUNT II

## INFRINGEMENT OF THE '989 PATENT

90.     The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

91.     Defendants have directly infringed, and continue to directly infringe, the '989 patent by making, using, offering for sale, selling, and/or importing into the United States external catheters, including the Versette and QiVi Female, and contributed to and/or induced infringement of the '989 patent by others, including hospitals, patients, and other customers by making, using, offering for sale, selling, and/or importing into the United States external catheters and urine management devices, including the Versette, QiVi Female and AUM.

92.     For example, and without limitation, upon information and belief, the materials referenced above show that the use of the Versette and QiVi Female meet every limitation of at least independent claim 1 of the '989 patent.

93.     As shown in the images, Instructions for Use, and instructional videos referenced above, the Versette and QiVi Female are a "urine collecting apparatus" and include "a fluid impermeable casing having a fluid reservoir at a first end, a fluid outlet at a second end, and a longitudinally extending fluid impermeable layer coupled to the fluid reservoir and the fluid outlet and defining a longitudinally elongated opening between the fluid reservoir and the fluid outlet." '989 patent at 27:48-53.

94.     The Versette and QiVi Female include "a fluid permeable support disposed within the fluid impermeable casing with a portion extending across the longitudinally elongated opening, wherein the fluid permeable support is distinct from and at least proximate to the fluid reservoir." '989 patent at 27:54-58.

95.     The Versette and QiVi Female include "a fluid permeable membrane disposed on the fluid permeable support and covering at least the portion of the fluid permeable support that extends across the longitudinally elongated opening, so that the fluid permeable membrane is supported on the fluid permeable support and disposed across the longitudinally elongated opening." '989 patent at 27:59-65.

96.     Further, the use of the Versette and QiVi Female includes "disposing in operative relationship with the urethral opening of a female user a urine collecting apparatus," wherein "the operative relationship includes the longitudinally elongated opening being adjacent to the urethral opening." '989 patent at 27:45-47, 28:5-7.

97.     The use of the Versette and QiVi Female includes "allowing urine discharged from the urethral opening to be received through the longitudinally elongated opening of the longitudinally extending fluid impermeable layer, the fluid permeable membrane, the fluid permeable support, and into the fluid reservoir." '989 patent at 28:8-12.

98.     The use of the Versette and QiVi Female includes "allowing the received urine to be withdrawn from the fluid reservoir via the tube and out of the fluid discharge end of the tube." '989 patent at 28:13-15.

99.     Thus, the Versette and QiVi Female meet every limitation of at least independent claim 1 of the '989 patent and Defendants directly infringe claim 1 in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing the Versette and/or QiVi Female into the United States.

100.    Defendants also have indirectly infringed and continue to indirectly infringe the claims of the '989 patent by inducing infringement pursuant to 35 U.S.C. § 271(b) and/or contributing to infringement pursuant to 35 U.S.C. § 271(c).

101.    On information and belief, in violation of 35 U.S.C. § 271(b), Defendants specifically intended to induce infringement of the '989 patent by the customers and users of the Versette, QiVi Female, and AUM and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.

102.    On information and belief, Defendants knew or were willfully blind to the existence of the '989 patent by at least August 27, 2019, when the patent issued.  Plaintiff and Defendants are direct and active competitors in the field of female and male external urine management systems and thus it is highly likely that Defendants would have been aware when the '989 patent issued.

103.    Further, Medline knew or was willfully blind to the existence of the '989 patent because Medline previously conducted a diligence investigation into PureWick's patent portfolio and the PureWick Female product when considering whether to acquire PureWick.

104.    Further, Defendants knew or were willfully blind to the existence of the '989 patent by at least October 2, 2019 when PureWick filed an amended complaint to assert the '989 patent against Sage Products, LLC's ("Sage") female external product, PrimaFit in *PureWick Corp. v. Sage Prods., LLC*, C.A. No. 19-1508-MN (D. Del.), or by April 1, 2022, when a jury determined the '989 patent was valid and that Sage's PrimaFit product infringed the '989 patent.

105.    Further, Defendants knew or were willfully blind to the existence of the '989 patent by at least January 26, 2022 when PureWick asserted the '989 patent against Sage's female external product, PrimaFit 2.0 in *PureWick Corp. v. Sage Prods., LLC*, C.A. No. 22-102-MN (D. Del.), or Medline knew or was willfully blind by at least on or around December 15, 2022, when Medline Industries, LP was served with a subpoena in that litigation.

25

106.   Plaintiff and Defendants are direct and active competitors in the field of female and male external urine management systems and thus it is highly likely that Defendants would have been aware of these litigations.

107.   Further, Defendants patent filings demonstrate that they were aware of the '989 patent.  For example, Medline Industries, LP is the applicant for U.S. Patent No. 11,504,265, which was filed on June 18, 2020 and, upon information and belief, is related to the Versette.  As part of the prosecution of that patent, Medline Industries, LP submitted an information disclosure statement on June 19, 2020 listing the '989 patent.  Similarly, CM Technologies, Inc. is the applicant for U.S. Patent No. 11,207,206, which was filed on April 20, 2021 and, upon information and belief is related to the QiVi products.  As part of the prosecution of that patent, CM Technologies, Inc. submitted an information disclosure statement on June 18, 2021 listing the '989 patent.

108.   On information and belief, Defendants' customers directly infringe the '989 patent. For example, when the Versette or QiVi Female is sold to hospitals, medical professionals, and/or patients, those customers infringe at least independent claim 1 of the '989 patent through the use of the Versette or QiVi Female.

109.   Further, when urine management devices, including the AUM, are sold to hospitals, medical professionals, and/or patients, those customers infringe at least dependent claim 2 of the '989 patent through the use of urine management devices, including the AUM, with external female catheters, including the Versette or QiVi Female.  Claim 1 of the '989 patent depends from independent claim 1 and adds a step to the method "further comprising fluidically coupling the fluid discharge end of the tube to a source of vacuum to assist in withdrawing the urine from the fluid reservoir via the tube."  '989 patent at 28:16-19.  The materials referenced above show that

26

using the AUM involves "fluidically coupling the fluid discharge end of the tube to a source of vacuum to assist in withdrawing the urine from the fluid reservoir via the tube." Therefore, when Defendants' customers use the AUM in combination with external female catheters like the Versette or QiVi Female, which satisfy the limitations of claim 1 of the '989 patent, the resulting use directly infringes claim 2 of the '989 patent.

110.    On information and belief, Defendants specifically intend for customers to infringe the '989 patent. Defendants encourage infringement by customers at least by providing product support that instructs users on how to use the Versette, QiVi Female, and AUM. For example, as described above, Medline provides "Instructions for Use" and directs customers to an instructional video. Ex. 8. The Instructions and video give detailed instructions for use of Versette for "non-invasive collection of urine output management in (female) patients." Ex. 8. As another example, as described above, Defendants provide Instructions for Use for the QiVi Female, which states that the QiVi Female "designed for the management of urine in semi and non-ambulatory female patients" and describes the device as including "a urine collection chamber that contours over the anatomy to collect and divert urine as it passes from the patient." Ex. 10. As another example, Medline has provided an instructional video for the AUM that describes it as a device that is "designed to collect urine … in a portable setting" and "works with most suction based external catheters, like Medline's QiVi and Versette."

111.    On information and belief, despite Defendants' knowledge of the '989 patent and knowledge that customers will necessarily infringe the '989 patent when the Versette, QiVi Female, and AUM are used as instructed, Defendants continues to encourage infringement.

112.    Defendants also contribute to infringement of the '989 patent by Defendants' customers in violation of 35 U.S.C. § 271(c). On information and belief, Defendants were aware

27

of the '989 patent at least as early as August 27, 2019 or October 2, 2019 or June 19, 2020 or June 18, 2021 or January 26, 2022 or April 1, 2022 or February 16, 2023. On information and belief, Defendants offer to sell and sell within the United States the Versette, QiVi Female, and AUM knowing that they constitute a material part of the claimed inventions, knowing that the Versette, QiVi Female, and AUM are especially made or especially adapted for use in infringing the '989 patent, and knowing that the Versette, QiVi Female, and AUM are not a staple article or commodity of commerce suitable for substantial non-infringing use.

113.   Defendants have committed and continues to commit all of the above acts of infringement without license or authorization.

114.   PureWick has complied with the requirements of 35 U.S.C. § 287 by, among other things, marking its products with the '989 patent, and giving actual notice to Defendants of their infringement of the '989 patent by, *inter alia*, service of this Complaint.

115.   As a result of Defendants' infringement of the '989 patent, Plaintiff has suffered damages and will continue to suffer damages.

116.   On information and belief, the infringement of the '989 patent by Defendants has been and continues to be willful. On information and belief, Defendants have had knowledge of the '989 patent and knowledge that the PureWick Female, PureWick Flex, PureWick UCS, and PureWick PCS are covered by the '989 patent. On information and belief, Defendants copied the patented aspects of the PureWick Female and PureWick UCS despite knowing that they are covered by the '989 patent. Defendants have thus sold the Versette and QiVi Female knowing of the risk of infringement and/or in view of a risk of infringement that was sufficiently obvious that it should have been known to Defendants. Despite this risk, Defendants have deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for

28

PureWick's patent rights. Thus, Defendants' infringing actions have been and continue to be consciously wrongful, entitling PureWick to increased damages under 35 U.S.C. § 284.

117. Under 35 U.S.C. § 283, Plaintiff is entitled to a permanent injunction against further infringement. Defendants' wrongful conduct has caused and will continue to cause Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent right to exclude others from making, using selling, offering to sell, and/or importing Plaintiff's patented inventions. On information and belief, Defendants will continue to infringe the '989 patent unless permanently enjoined by the Court.

**COUNT III**

**INFRINGEMENT OF THE '183 PATENT**

118. The allegations in the preceding paragraphs are incorporated by reference as if fully set forth herein.

119. Medline has directly infringed, and continues to directly infringe, the '183 patent by making, using, offering for sale, selling, and/or importing into the United States external catheters, including the Versette, and contributed to and/or induced infringement of the '183 patent by others, including hospitals, patients, and other customers.

120. For example, and without limitation, upon information and belief, the materials referenced above show that the Versette meets every limitation of at least independent claim 1 of the '183 patent, and Medline's making, using, offering for sale, selling, and/or importing the Versette into the United States directly infringes at least claim 1 of the '183 patent under 35 U.S.C. § 271(a).

121. As shown in the images, Instructions for Use, and instructional videos referenced above, the Versette is "[a] container for collecting liquid for transport" and includes a "moisture-wicking material positioned to be disposed in contact with a body." '183 patent at 4:16-19.

29

122.    The Versette includes a "web of flexible porous material positioned directly adjacent to at least a portion of the moisture-wicking material and at least partially defining at least one wall." '183 patent at 4:20-22.

123.    The Versette includes a "closed end." '183 patent at 4:23.

124.    The Versette includes "a non-permeable material covering at least a portion of the web of flexible porous material." '183 patent at 4:24-25.

125.    The Versette includes a "a chamber having a first portion and a second portion, the first portion configured to receive at least a portion of a tube in a position within the chamber that enables said tube to transport liquid from the second portion of the chamber while said liquid collects within the second portion of the chamber upon being drawn through the web of flexible porous material when a partial vacuum is applied within the chamber via said tube, the first portion of the chamber including an interior surface at least partially defined by the at least one wall of the web of flexible porous material, and the second portion of the chamber positioned at the closed end and defined at least partially by a portion of the non-permeable material that is spaced from both the web of flexible porous material and an end of the tube when at least the portion of the tube is received in the first portion of the chamber." '183 patent at 4:26-42.

126.    Thus, the Versette meets every limitation of at least independent claim 1 of the '183 patent and Medline directly infringes claim 1 in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing the Versette into the United States.

127.    Medline also has indirectly infringed and continues to indirectly infringe the claims of the '183 patent by inducing infringement pursuant to 35 U.S.C. § 271(b) and/or contributing to infringement pursuant to 35 U.S.C. § 271(c).

128.    On information and belief, in violation of 35 U.S.C. § 271(b), Medline specifically intended to induce infringement of the '183 patent by its customers and/or users of the Versette and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.

129.    On information and belief, Medline knew or was willfully blind to the existence of the '183 patent as early as August 17, 2021, when the patent issued.  Plaintiff and Medline are direct and active competitors in the field of female and male external urine management systems and thus it is highly likely that Medline would have been aware when the '183 patent issued.

130.    Further, Medline knew or was willfully blind to the existence of the '183 patent by at least on or around December 15, 2022, when Medline Industries, LP was served with a subpoena in *PureWick Corp. v. Sage Prods., LLC*, C.A. No. 22-102-MN (D. Del.), which identified Patent Application No. 14/952,591, the application that issued as the '183 patent.

131.    Further, Medline knew or was willfully blind to the existence of the '183 patent because Medline previously conducted a diligence investigation into PureWick's patent portfolio and the PureWick Female product when considering whether to acquire PureWick.

132.    Further, Medline's patent filings demonstrate their knowledge of the '183 patent. For example, Medline Industries, LP is the applicant for U.S. Patent No. 11,504,265, which was filed on June 18, 2020 and, upon information and belief, is related to Versette.  As part of the prosecution of that patent, Medline Industries, LP submitted an information disclosure statement on June 19, 2020 listing the U.S. Patent Publication No. 2017/0252202, which later issued as the '183 patent.  A true and correct copy of that information disclosure statement is provided at Ex. 11.

133.    On information and belief, Medline's customers directly infringe the '183 patent. For example, when the Versette is sold to hospitals, medical professionals, and/or patients, those customers infringe at least independent claim 1 of the '183 patent through the use of the Versette.

134.    On information and belief, Medline specifically intends for customers to infringe the '183 patent.  Medline encourages infringement by customers at least by providing product support that instructs users on how to use the Versette.  For example, as described above, Medline provides "Instructions for Use" and directs customers to an instructional video.  Ex. 8.  The Instructions and video give detailed instructions for use of Versette for "non-invasive collection of urine output management in (female) patients."  Ex. 8.

135.    On information and belief, despite Medline's knowledge of the '183 patent and knowledge that customers will necessarily infringe the '183 patent when the Versette is used as instructed, Medline continues to encourage infringement.

136.    Medline also contributes to infringement of the '183 patent by Medline's customers in violation of 35 U.S.C. § 271(c).  On information and belief, Medline was aware of the '183 patent at least as early as August 17, 2021.  On information and belief, Medline offers to sell and sells within the United States the Versette knowing that it constitutes a material part of the claimed inventions, knowing that the Versette is especially made or especially adapted for use in infringing the '183 patent, and knowing that the Versette is not a staple article or commodity of commerce suitable for substantial non-infringing use.

137.    Medline has committed and continues to commit all of the above acts of infringement without license or authorization.

32

138. PureWick has complied with the requirements of 35 U.S.C. § 287 by, among other things, marking its products with the '183 patent, and giving actual notice to Medline of its infringement of the '183 patent by, *inter alia*, service of this Complaint.

139. As a result of Medline's infringement of the '183 patent, Plaintiff has suffered damages and will continue to suffer damages.

140. On information and belief, the infringement of the '183 patent by Medline has been and continues to be willful. Medline has had knowledge of the '183 patent and knowledge that the PureWick Female and PureWick Flex is covered by the '183 patent. On information and belief, Defendants copied the patented aspects of the PureWick Female despite knowing that they are covered by the '183 patent. Medline has sold the Versette knowing of the risk of infringement and/or in view of a risk of infringement that was sufficiently obvious that it should have been known to Medline. Despite this risk, Medline has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for PureWick's patent rights. Thus, Medline's infringing actions have been and continue to be consciously wrongful, entitling PureWick to increased damages under 35 U.S.C. § 284.

141. Under 35 U.S.C. § 283, Plaintiff is entitled to a permanent injunction against further infringement. Medline's wrongful conduct has caused and will continue to cause Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent right to exclude others from making, using selling, offering to sell, and/or importing Plaintiff's patented inventions. On information and belief, Medline will continue to infringe the '183 patent unless permanently enjoined by the Court.

## COUNT IV

## INFRINGEMENT OF THE '962 PATENT

142. The allegations in the preceding paragraphs are incorporated by reference as if fully set forth herein.

143. Medline has directly infringed, and continues to directly infringe, the '962 patent by making, using, offering for sale, selling, and/or importing into the United States external catheters, including the Versette, and contributed to and/or induced infringement of the '962 patent by others, including hospitals, patients, and other customers.

144. For example, and without limitation, on information and belief, the materials referenced above show that the Versette meets every limitation of at least independent claim 1 of the '962 patent, and Medline's making, using, offering for sale, selling, and/or importing the Versette into the United States directly infringes at least claim 1 of the '962 patent under 35 U.S.C. § 271(a).

145. As shown in the images, Instructions for Use, and instructional videos referenced above, the Versette is "liquid collection system." '962 patent at 4:39.

146. The Versette includes "a shell defining a chamber and a window opening," wherein "the shell ha[s] a first end region," "a second end region distal to the first end region," "a port configured to receive tubing," "a back surface extending between the first end region and the second end region," "a front surface at least partially distal to the back surface, and two elongated edges spaced inwardly from the front surface and that at least partially define the window opening on the front surface." '962 patent at 4:40-48.

147. The Versette includes "a wicking article positioned within the chamber," wherein the wicking article includes "at least a porous material and a convex region" and "is positioned in the chamber such that the convex region of the wicking article is exposed through and extends

34

across the window opening for application against a particular source of moisture." '962 patent at 4:49-55.

148. The Versette includes a shell and wicking article that "are flexible and configured to be curved such that the convex region of the wicking article exposed through the window opening is recessed between the first end region and the second end region of the shell." '962 patent at 4:56-60.

149. Thus, the Versette meets every limitation of at least independent claim 1 of the '962 patent and Medline directly infringes claim 1 in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing the Versette into the United States.

150. Medline also has indirectly infringed and continue to indirectly infringe the claims of the '962 patent by inducing infringement pursuant to 35 U.S.C. § 271(b) and/or contributing to infringement pursuant to 35 U.S.C. § 271(c).

151. On information and belief, in violation of 35 U.S.C. § 271(b), Medline specifically intended to induce infringement of the '962 patent by its customers and users of the Versette and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.

152. On information and belief, Medline knew or was willfully blind to the existence of the '962 patent as early as January 14, 2025, when the patent issued. Plaintiff and Medline are direct and active competitors in the field of female external urine management systems and thus it is highly likely that Medline would have been aware when the '962 patent issued.

153. Further, Medline knew or was willfully blind to the existence of the '962 patent because Medline previously conducted a diligence investigation into PureWick's patent portfolio and the PureWick Female product when considering whether to acquire PureWick.

35

154.    On information and belief, Medline's customers directly infringe the '962 patent. For example, when the Versette is sold to hospitals, medical professionals, and/or patients, those customers infringe at least independent claim 1 of the '962 patent through the use of the Versette.

155.    On information and belief, Medline specifically intends for customers to infringe the '962 patent.  Medline encourages infringement by customers at least by providing product support that instructs users on how to use the Versette.  For example, as described above, Medline provides "Instructions for Use" and directs customers to an instructional video.  Ex. 8.  The Instructions and video give detailed instructions for use of Versette for "non-invasive collection of urine output management in (female) patients."  Ex. 8.

156.    On information and belief, despite Medline's knowledge of the '962 patent and knowledge that customers will necessarily infringe the '962 patent when the Versette is used as instructed, Medline continues to encourage infringement.

157.    Medline also contributes to infringement of the '962 patent by Medline's customers in violation of 35 U.S.C. § 271(c).  On information and belief, Medline was aware of the '962 patent at least as early as January 14, 2025.  On information and belief, Medline offers to sell and sells within the United States the Versette knowing that it constitutes a material part of the claimed inventions, knowing that the Versette is especially made or especially adapted for use in infringing the '962 patent, and knowing that the Versette is not a staple article or commodity of commerce suitable for substantial non-infringing use.

158.    Medline has committed and continues to commit all of the above acts of infringement without license or authorization.

159.    PureWick has complied with the requirements of 35 U.S.C. § 287 by, among other things, marking its products with the '962 patent, and giving actual notice to Medline of its infringement of the '962 patent by, *inter alia*, service of this Complaint.

160.    As a result of Medline's infringement of the '962 patent, Plaintiff has suffered damages and will continue to suffer damages.

161.    On information and belief, the infringement of the '962 patent by Medline has been and continues to be willful.  On information and belief, Medline has had knowledge of the '962 patent and knowledge that the PureWick Female and PureWick Flex is covered by the '962 patent. On information and belief, Medline copied the patented aspects of the PureWick Female despite knowing that they are covered by the '962 patent.  Medline has sold the Versette knowing of the risk of infringement and/or in view of a risk of infringement that was sufficiently obvious that it should have been known to Medline.  Despite this risk, Medline has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for PureWick's patent rights.  Thus, Medline's infringing actions have been and continue to be consciously wrongful, entitling PureWick to increased damages under 35 U.S.C. § 284.

162.    Under 35 U.S.C. § 283, Plaintiff is entitled to a permanent injunction against further infringement.  Medline's wrongful conduct has caused and will continue to cause Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent right to exclude others from making, using selling, offering to sell, and/or importing Plaintiff's patented inventions.  On information and belief, Medline will continue to infringe the '962 patent unless permanently enjoined by the Court.

## COUNT V

## INFRINGEMENT OF THE '765 PATENT

163.    The allegations in the preceding paragraphs are incorporated by reference as if fully set forth herein.

164.    Medline has directly infringed, and continue to directly infringe, the '765 patent by making, using, offering for sale, selling, and/or importing into the United States external catheters, including the Versette, and contributed to and/or induced infringement of the '765 patent by others, including hospitals, patients, and other customers.

165.    For example, and without limitation, on information and belief, the materials referenced above show the Versette meets every limitation of at least independent claim 1 of the '765 patent, and Medline's making, using, offering for sale, selling, and/or importing the Versette into the United States directly infringes at least claim 1 of the '765 patent under 35 U.S.C. § 271(a).

166.    As shown in the images, Instructions for Use, and instructional videos referenced above, the Versette is "fluid collection device." '765 patent at 36:8.

167.    The Versette includes "a fluid impermeable layer at least partially defining an interior volume of the fluid collection device." '765 patent at 36:9-10.

168.    The Versette includes "a fluid permeable membrane having an outer surface positioned to contact skin of a user." '765 patent at 36:11-12.

169.    The Versette includes "an outlet in fluid communication with the interior volume of the fluid collection device." '765 patent at 36:13-14.

170.    The Versette includes "an elongated member configured to adjust to a nonlinear configuration, and assume and/or maintain the nonlinear configuration after being adjusted to the nonlinear configuration to maintain the fluid collection device in the nonlinear configuration." '765 patent at 36:15-19.

171.    The Versette includes "a generally elongated tube disposed in the interior volume of the fluid collection device and in fluid communication with the outlet, wherein the elongated member is separate and distinct from the elongated tube." '765 patent at 36:20-23.

172.    Thus, the Versette meets every limitation of at least independent claim 1 of the '765 patent and Medline directly infringes claim 1 in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing the Versette into the United States.

173.    Medline also has indirectly infringed and continue to indirectly infringe the claims of the '765 patent by inducing infringement pursuant to 35 U.S.C. § 271(b) and/or contributing to infringement pursuant to 35 U.S.C. § 271(c).

174.    On information and belief, in violation of 35 U.S.C. § 271(b), Medline specifically intended to induce infringement of the '765 patent by its customers and users of the Versette and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.

175.    On information and belief, Medline knew or was willfully blind to the existence of the '765 patent as early as June 10, 2025, when the patent issued.  Plaintiff and Medline are direct and active competitors in the field of female and male external urine management systems and thus it is highly likely that Medline would have been aware when the '765 patent issued.

176.    Further, Medline knew or was willfully blind to the existence of the '765 patent because Medline previously conducted a diligence investigation into PureWick's patent portfolio and the PureWick Female product when considering whether to acquire PureWick.

177.    On information and belief, Medline's customers directly infringe the '765 patent. For example, when the Versette is sold to hospitals, medical professionals, and/or patients, those customers infringe at least independent claim 1 of the '765 patent through the use of the Versette.

39

178.    On information and belief, Medline specifically intends for customers to infringe the '765 patent.  Medline encourages infringement by customers at least by providing product support that instructs users on how to use the Versette.  For example, as described above, Medline provides "Instructions for Use" and directs customers to an instructional video.  Ex. 8.  The Instructions and video give detailed instructions for use of Versette for "non-invasive collection of urine output management in (female) patients."  Ex. 8.

179.    On information and belief, despite Medline's knowledge of the '765 patent and knowledge that customers will necessarily infringe the '765 patent when the Versette is used as instructed, Medline continues to encourage infringement.

180.    Medline also contributes to infringement of the '765 patent by Medline's customers in violation of 35 U.S.C. § 271(c).  On information and belief, Medline was aware of the '765 patent at least as early as June 10, 2025.  On information and belief, Medline offers to sell and sells within the United States the Versette knowing that it constitutes a material part of the claimed inventions, knowing that the Versette is especially made or especially adapted for use in infringing the '765 patent, and knowing that the Versette is not a staple article or commodity of commerce suitable for substantial non-infringing use.

181.    Medline has committed and continues to commit all of the above acts of infringement without license or authorization.

182.    PureWick has complied with the requirements of 35 U.S.C. § 287 by giving actual notice to Medline of its infringement of the '765 patent by, *inter alia*, service of this Complaint.

183.    As a result of Medline's infringement of the '765 patent, Plaintiff has suffered damages and will continue to suffer damages.

184.    On information and belief, the infringement of the '765 patent by Medline has been and continues to be willful.  On information and belief, Medline has had knowledge of the '765 patent and knowledge that the PureWick Flex is covered by the '765 patent.  Medline has sold the Versette knowing of the risk of infringement and/or in view of a risk of infringement that was sufficiently obvious that it should have been known to Medline.  Despite this risk, Medline has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for PureWick's patent rights.  Thus, Medline's infringing actions have been and continue to be consciously wrongful, entitling PureWick to increased damages under 35 U.S.C. § 284.

185.    Under 35 U.S.C. § 283, Plaintiff is entitled to a permanent injunction against further infringement.  Medline's wrongful conduct has caused and will continue to cause Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent right to exclude others from making, using selling, offering to sell, and/or importing Plaintiff's patented inventions.  On information and belief, Medline will continue to infringe the '765 patent unless permanently enjoined by the Court.

## COUNT VI

## INFRINGEMENT OF THE '053 PATENT

186.    The allegations in the preceding paragraphs are incorporated by reference as if fully set forth herein.

187.    Defendants have directly infringed, and continue to directly infringe, the '053 patent by making, using, offering for sale, selling, and/or importing into the United States external catheters, including the QiVi Male and QiVi Female, and contributed to and/or induced infringement of the '053 patent by others, including hospitals, patients, and/or other customers by making, using, offering for sale, selling, and/or importing into the United States external catheters and urine management devices, including the QiVi Male, QiVi Female, and AUM.

188. For example, and without limitation, on information and belief, the materials referenced above show that the use of the QiVi Male and QiVi Female meet every limitation of at least independent method claim 15 of the '053 patent, and Defendants' making, using, offering for sale, selling, and/or importing the QiVi Male and QiVi Female into the United States directly infringes at least claim 15 of the '053 patent under 35 U.S.C. § 271(a).

189. As shown in the images, Instructions for Use, and instructional videos referenced above, the use of the QiVi Male and QiVi Female includes using a "method to collect fluid." '053 patent at 26:48.

190. Use of the QiVi Male and QiVi Female includes "positioning an opening of a fluid collection device adjacent to a female urethra or a male urethra of a user," wherein "the opening [is] defined by a fluid impermeable barrier of the fluid collection device." '053 patent at 26:49-52.

191. Use of the QiVi Male and QiVi Female includes "securing the fluid collection device to the user with at least one flange attached to the fluid collection device." '053 patent at 26:53-54.

192. Use of the QiVi Male and QiVi Female includes "receiving fluid from the female urethra or male urethra into a chamber of the fluid collection device, the chamber of the fluid collection device at least partially defined by the fluid impermeable barrier." '053 patent at 26:55-58.

193. Thus, use of the QiVi Male and QiVi Female meets every limitation of at least independent claim 15 of the '053 patent and Defendants directly infringe claim 15 in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing the QiVi Male and QiVi Female into the United States.

194. Defendants also have indirectly infringed and continue to indirectly infringe the claims of the '053 patent by inducing infringement pursuant to 35 U.S.C. § 271(b) and/or contributing to infringement pursuant to 35 U.S.C. § 271(c).

195. On information and belief, in violation of 35 U.S.C. § 271(b), Defendants specifically intended to induce infringement of the '053 patent by their customers and users of the QiVi Male, QiVi Female, and AUM and had knowledge that the inducing acts would cause infringement or were willfully blind to the possibility that their inducing acts would cause infringement.

196. On information and belief, Defendants knew or were willfully blind to the existence of the '053 patent as early as March 26, 2024, when the patent issued. Plaintiff and Defendants are direct and active competitors in the field of female and male external urine management systems and thus it is highly likely that Defendants would have been aware when the '053 patent issued.

197. Further, Medline knew or was willfully blind to the existence of the '053 patent because Medline previously conducted a diligence investigation into PureWick's patent portfolio and the PureWick Female product when considering whether to acquire PureWick.

198. Further, Medline's patent filings demonstrate that they were aware of the '053 patent. For example, Medline Industries, LP is the applicant for U.S. Patent No. 11,504,265, which was filed on June 18, 2020 and, upon information and belief, is related to Versette. As part of the prosecution of that patent, the examiner issued a non-final rejection on December 20, 2021 based in part on U.S. Patent Publication No. 2021/0236323, which eventually issued as the '053 patent.

199. On information and belief, Defendants' customers directly infringe the '053 patent. For example, when the QiVi Male and QiVi Female is sold to hospitals, medical professionals,

43

and/or patients, those customers infringe at least independent claim 15 of the '053 patent through the use of the QiVi Male and QiVi Female.

200.    Further, on information and belief, Defendants' customers directly infringe the '053 patent when using urine management devices, including the AUM, with external suction catheters with flanges, including the QiVi Male and QiVi Female.  Claim 19 of the '053 patent is a dependent claim from claim 15 and further requires "removing at least some of the fluid from the fluid collection device with a vacuum source effective to suction the fluid from the chamber via a conduit disposed therein and in fluid communication with the vacuum source."  '053 patent at 28:4-8.  Upon information and belief, the materials referenced above show that using the AUM with the QiVi Male or QiVi Female, which meet all the limitations of claim 15 of the '053 patent, further involves "removing at least some of the fluid from the fluid collection device with a vacuum source effective to suction the fluid from the chamber via a conduit disposed therein and in fluid communication with the vacuum source."  Therefore, when the AUM is sold to hospitals, medical professionals, and/or patients, those customers infringe at least dependent claim 19 of the '053 patent through the use of the AUM with external catheters that have flanges, including the QiVi Male and QiVi Female.

201.    On information and belief, Defendants specifically intend for customers to infringe the '053 patent.  Defendants encourage infringement by customers at least by providing product support that instructs users on how to use the QiVi Male, QiVi Female and AUM.  For example, the QiVi Male Instructions for Use state that QiVi Male is an "External Urine Management device" "indicated for non-invasive urine management in semi and non-ambulatory adolescent and adult male patients by diverting and collecting urine away from the patient's body." Ex. 9.  For example, the QiVi Female Instructions for Use state that QiVi Female is "designed for the management of

44

urine in semi and non-ambulatory female patients" and describes the device as including "a urine collection chamber that contours over the anatomy to collect and divert urine as it passes from the patient." Ex. 10. For example, Medline's instructional video for the AUM describes it as a device that is "designed to collect urine … in a portable setting" and "works with most suction based external catheters, like Medline's QiVi and Versette."

202. On information and belief, despite Defendants' knowledge of the '053 patent and knowledge that customers will necessarily infringe the '053 patent when the QiVi Male is used as instructed, Defendants continue to encourage infringement.

203. Defendants also contribute to infringement of the '053 patent by Defendants' customers in violation of 35 U.S.C. § 271(c). On information and belief, Defendants were aware of the '053 patent at least as early as March 26, 2024. On information and belief, Defendants offer to sell and sell within the United States the QiVi Male, QiVi Female, and AUM knowing that they constitute a material part of the claimed inventions, knowing that the QiVi Male, QiVi Female, and AUM are especially made or especially adapted for use in infringing the '053 patent, and knowing that the QiVi Male, QiVi Female, and AUM are not a staple article or commodity of commerce suitable for substantial non-infringing use.

204. Defendants have committed and continue to commit all of the above acts of infringement without license or authorization.

205. PureWick has complied with the requirements of 35 U.S.C. § 287 by, among other things, marking its products with the '053 patent, and giving actual notice to Defendants of their infringement of the '053 patent by, *inter alia*, service of this Complaint.

206. As a result of Defendants' infringement of the '053 patent, Plaintiff has suffered damages and will continue to suffer damages.

45

207. On information and belief, the infringement of the '053 patent by Defendants has been and continues to be willful. On information and belief, Defendants have had knowledge of the '053 patent and knowledge that use of the PureWick Male, PureWick UCS, and PureWick PCS are covered by the '053 patent since at least as early as March 26, 2024. Defendants have sold the QiVi Male product knowing of the risk of infringement and/or in view of a risk of infringement that was sufficiently obvious that it should have been known to Defendants. Despite this risk, Defendants have deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for PureWick's patent rights. Thus, Defendants' infringing actions have been and continue to be consciously wrongful, entitling PureWick to increased damages under 35 U.S.C. § 284.

208. Under 35 U.S.C. § 283, Plaintiff is entitled to a permanent injunction against further infringement. Defendants' wrongful conduct has caused and will continue to cause Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent right to exclude others from making, using selling, offering to sell, and/or importing Plaintiff's patented inventions. On information and belief, Defendants will continue to infringe the '053 patent unless permanently enjoined by the Court.

**COUNT VII**

**INFRINGEMENT OF THE '579 PATENT**

209. The allegations in the preceding paragraphs are incorporated by reference as if fully set forth herein.

210. Defendants have directly infringed, and continue to directly infringe, the '579 patent by making, using, offering for sale, selling, and/or importing into the United States external catheters, including the QiVi Male and QiVi Female, and contributed to and/or induced infringement of the '579 patent by others, including hospitals, patients, and other customers.

46

211.    For example, and without limitation, on information and belief, the materials referenced above show that the QiVi Male and QiVi Female meet every limitation of at least independent claim 1 of the '579 patent, and Defendants' making, using, offering for sale, selling, and/or importing the QiVi Male and QiVi Female into the United States directly infringes at least claim 1 of the '579 patent under 35 U.S.C. § 271(a).

212.    As shown in the images, Instructions for Use, and instructional videos referenced above, the QiVi Male and QiVi Female are a "fluid collection device." '579 patent at 36:8.

213.    The QiVi Male and QiVi Female include "a fluid barrier having a proximal end region, a distal end region, a first region, and a second region opposite to the first region," wherein "the first region at least partially defin[es] an opening extending therethrough and disposed between the proximal end region and the distal end region," and "wherein a portion the first region of the fluid barrier extends proximally from the distal end region to the opening such that the opening is spaced from the distal end region by the portion of the first region of the fluid barrier." '579 patent at 36:9-18.

214.    The QiVi Male and QiVi Female include "an interior region disposed within the fluid collection device to receive fluid discharged by a user," wherein "the interior region include[es] a sump formed between the portion of the first region and a portion of the second region of the fluid barrier extending proximally from the distal end region." '579 Patent at 36:19-24.

215.    The QiVi Male and QiVi Female include "two tubes extending longitudinally along the fluid collection device from the proximal end region to the distal end region of the fluid barrier," wherein "each of the two tubes ha[s] an open end disposed in the sump of the interior region of the fluid collection device proximate to the distal end region of the fluid barrier and

between the portion of the first region and a portion of the second region of the fluid barrier extending proximally from the distal end region," and wherein the "opening is disposed at least partially between the two tubes." '579 Patent at 36:25-34.

216. Thus, the QiVi Male and QiVi Female meet every limitation of at least independent claim 1 of the '579 patent and Defendants directly infringe claim 1 in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing the QiVi Male and QiVi Female into the United States.

217. Defendants also have indirectly infringed and continue to indirectly infringe the claims of the '579 patent by inducing infringement pursuant to 35 U.S.C. § 271(b) and/or contributing to infringement pursuant to 35 U.S.C. § 271(c).

218. On information and belief, in violation of 35 U.S.C. § 271(b), Defendants specifically intended to induce infringement of the '579 patent by their customers and users of the QiVi Male and QiVi Female and had knowledge that the inducing acts would cause infringement or were willfully blind to the possibility that their inducing acts would cause infringement.

219. On information and belief, Defendants knew or were willfully blind to the existence of the '579 patent as early as December 10, 2024, when the patent issued. Plaintiff and Defendants are direct and active competitors in the field of female and male external urine management systems and thus it is highly likely that Defendants would have been aware when the '579 patent issued.

220. Further, Medline knew or was willfully blind to the existence of the '579 patent because Medline previously conducted a diligence investigation into PureWick's patent portfolio and the PureWick Female product when considering whether to acquire PureWick.

48

221.     On information and belief, Defendants' customers directly infringe the '579 patent. For example, when the QiVi Male is sold to hospitals, medical professionals, and/or patients, those customers infringe at least independent claim 1 of the '579 patent through the use of the QiVi Male.

222.     On information and belief, Defendants specifically intend for customers to infringe the '579 patent.  Defendants encourage infringement by customers at least by providing product support that instructs users on how to use the QiVi Male and QiVi Female.  For example, the QiVi Male Instructions for Use state that QiVi Male is an "External Urine Management device" "indicated for non-invasive urine management in semi and non-ambulatory adolescent and adult male patients by diverting and collecting urine away from the patient's body." Ex. 9.  For example, the QiVi Female Instructions for Use state that QiVi Female is "designed for the management of urine in semi and non-ambulatory female patients" and describes the device as including "a urine collection chamber that contours over the anatomy to collect and divert urine as it passes from the patient.." Ex. 10.

223.     On information and belief, despite Defendants' knowledge of the '579 patent and knowledge that customers will necessarily infringe the '579 patent when the QiVi Male and QiVi Female are used as instructed, Defendants continue to encourage infringement.

224.     Defendants also contribute to infringement of the '579 patent by Defendants' customers in violation of 35 U.S.C. § 271(c).  On information and belief, Defendants were aware of the '579 patent at least as early as December 10, 2024.  On information and belief, Defendants offer to sell and sell within the United States the QiVi Male and QiVi Female knowing that they constitute a material part of the claimed inventions, knowing that the QiVi Male and QiVi Female are especially made or especially adapted for use in infringing the '579 patent, and knowing that

the QiVi Male and QiVi Female are not a staple article or commodity of commerce suitable for substantial non-infringing use.

225.    Defendants have committed and continue to commit all of the above acts of infringement without license or authorization.

226.    PureWick has complied with the requirements of 35 U.S.C. § 287 by giving actual notice to Defendants of their infringement of the '579 patent by, *inter alia*, service of this Complaint.

227.    As a result of Defendants' infringement of the '579 patent, Plaintiff has suffered damages and will continue to suffer damages.

228.    On information and belief, the infringement of the '579 patent by Defendants has been and continues to be willful.  On information and belief, Defendants have had knowledge of the '579 patent.  Defendants have sold the QiVi Male and QiVi Female product knowing of the risk of infringement and/or in view of a risk of infringement that was sufficiently obvious that it should have been known to Defendants.  Despite this risk, Defendants have deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for PureWick's patent rights.  Thus, Defendants' infringing actions have been and continue to be consciously wrongful, entitling PureWick to increased damages under 35 U.S.C. § 284.

229.    Under 35 U.S.C. § 283, Plaintiff is entitled to a permanent injunction against further infringement.  Defendants' wrongful conduct has caused and will continue to cause Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent right to exclude others from making, using selling, offering to sell, and/or importing Plaintiff's patented inventions.  On information and belief, Defendants will continue to infringe the '579 patent unless permanently enjoined by the Court.

## JURY DEMAND

230.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff respectfully demands a trial by jury of all issues so triable.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff requests that judgment be entered in favor of Plaintiff and against Defendants as follows:

a.    A judgment that the Patents-in-Suit are directly and indirectly infringed by Defendants;

b.    An order permanently enjoining Defendants, their affiliates and subsidiaries, and each of their officers, agents, servants, and employees and those acting in privity or concert with them, from making, using, offering to sell, selling, or importing products claimed in any of the claims of the Patents-in-Suit, and from causing or encouraging others to use, sell, offer for sale, or import products that infringe any claim of the Patents-in-Suit , until after the expiration dates of the Patents-in-Suit, including any extensions and/or additional periods of exclusivity to which Plaintiff is or may become entitled;

c.    An order awarding damages under 35 U.S.C. § 284 in an amount sufficient to compensate Plaintiff for its damages arising from infringement by Defendants, including, but not limited to, lost profits and/or a reasonable royalty, together with pre-judgment and post-judgment interest, and costs;

d.    An order awarding treble damages for willful infringement by Defendants, pursuant to 35 U.S.C. § 284;

51

e.      An accounting and/or supplemental damages for all damages occurring after any

discovery cutoff and through the Court's decision regarding the imposition of a

permanent injunction;

f.      A judgment declaring that this case is exceptional and awarding Plaintiff its

reasonable costs and attorneys' fees pursuant to 35 U.S.C. § 285; and

g.      Such other relief as this Court or a jury may deem proper and just under the

circumstances.

Dated:  May 11, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

*s/ Jared W. Newton*

Jared W. Newton (#7519)
500 Delaware Avenue, Suite 220
Wilmington, DE  19801
(302) 302-4000
jarednewton@quinnemanuel.com

OF COUNSEL:

*Attorneys for Plaintiff PureWick Corp.*

Steven C. Cherny (*pro hac vice forthcoming*)
Matthew A. Traupman (*pro hac vice forthcoming*)
Nicola R. Felice (*pro hac vice forthcoming*)
QUINN EMANUEL
 URQUHART & SULLIVAN, LLP
295 Fifth Avenue
New York, NY 10016
(212) 849-7000

52